# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

TINA R.H.,[1]

               Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

               Defendant.

Case No. 3:22-cv-00238-SLG

## DECISION AND ORDER

On or about April 16, 2018,[2] Tina R.H. ("Plaintiff") filed applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

XVI, respectively, of the Social Security Act ("the Act"),[3] alleging disability beginning July

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] The application summaries list May 8, 2018 as Plaintiff's application date. Although the record of Plaintiff's oral inquiry and/or intent to file does not appear in this Court's file, the ALJs and Plaintiff cite to a protected filing date of April 16, 2018. *See* Docket 18 at 1; Administrative Record ("A.R.") 16, 1074. Pursuant to 20 C.F.R. §§ 416.340-350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, April 16, 2018, is considered Plaintiff's application filing date for both SSI and DIB.

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Titles II and XVI in this case. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

27, 2015.[4]  Plaintiff requests remand for further proceedings.[5]  She has exhausted her administrative remedies and filed a Complaint seeking relief from this Court.[6]  Oral argument was not requested and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[7]  For the reasons set forth below, Plaintiff's request for relief is GRANTED.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[8]  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[10]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts

---

[4] In her initial applications, Plaintiff alleged disability beginning on December 30, 2014.  A.R. 201–04.  Advised by counsel, Plaintiff adjusted her alleged onset date to July 27, 2015.  A.R. 35, 1077, 1375.  The application summaries, not the applications themselves, appear in the Court's record.

[5] Docket 18.

[6] Docket 1 (Plaintiff's Compl.).

[7] 42 U.S.C. § 405(g).

[8] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[10] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 2 of 37

from the administrative law judge ("ALJ")'s conclusion.[11]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[12]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[13]

Even when the ALJ commits legal error, the ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination . . . or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[14]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[15]  In particular, the Ninth Circuit has held that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[16]

## II.  DETERMINING DISABILITY

---

[11] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[12] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[13] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[14] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[15] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[16] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

The Act provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[17] In addition, SSI may be available to individuals who are age 65 or older, blind, or disabled, but who do not have insured status under the Act.[18] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[19]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[20]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[21] A claimant bears the burden of proof at steps one through

---

[17] 42 U.S.C. § 423(a).

[18] 42 U.S.C. § 1381a.

[19] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[20] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[21] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 4 of 37

four in order to make a prima facie showing of disability.[22]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[23]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[24]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity." *The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 27, 2015.[25]*

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[26]  *The ALJ determined that Plaintiff had the following severe impairments: status post stenting of aneurysm of the left ophthalmic artery; degenerative disc disease of the cervical spine, status post fusion; degenerative disc disease of the lumbar spine; and osteoarthropathy of the right shoulder.  The ALJ found*

---

[22] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[23] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[24] *Tackett*, 180 F.3d at 1101.

[25] A.R. 1077.

[26] 20 C.F.R. § 404.1505(a).

that Plaintiff's asthma, history of hypertension and hyperthyroid, and vision impairment were non-severe impairments. The ALJ found that the record did not establish the existence of a medically determinable severe mental impairment.[27]

**Step 3.** Determine whether the impairment or combination of impairments meets or medically equals the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1. If the impairment(s) is(are) of a severity to meet or medically equal any of the listed impairments and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step. *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[28]*

Residual Functional Capacity. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[29] *The ALJ concluded that Plaintiff had the RFC to perform light work except she was limited to standing and walking combined for approximately five hours in an eight-hour workday; unlimited sitting, provided Plaintiff could stand and stretch at least every two hours or briefly walk such as to go get a file as part of her job duties; occasionally climbing ramps or stairs; never climbing ladders, ropes,*

---

[27] A.R. 1077–79.

[28] A.R. 1079.

[29] 20 C.F.R. § 404.1520(a)(4).

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 6 of 37

*or scaffolds; frequently balancing; occasionally stooping, kneeling, crouching, and crawling; avoiding exposure to excessive vibration; and occasionally being exposed to workplace hazards, such as working with dangerous machinery and working at unprotected heights.*[30]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step. *The ALJ found that Plaintiff was capable of performing her past relevant work as a hospital admitting clerk and an administrative clerk."*[31]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled. *Because the ALJ determined that Plaintiff was capable of performing past relevant work, the ALJ did not proceed to step five.*[32]

The ALJ concluded that Plaintiff was not disabled from July 27, 2015, through August 29, 2022, the date of the ALJ's decision.[33]

---

[30] A.R. 1080.

[31] A.R. 1090.

[32] A.R. 1091.

[33] A.R. 1091.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 7 of 37

### III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1965; she is 58 years old.[34]  On her alleged onset date, she was "closely approaching advanced age" (Age 50–54) and subsequently changed age categories to "advanced age" (Age 55+) prior to the ALJ's August 2022 decision.[35]  She reported working as a nurse case manager from approximately 2006 through December 30, 2014.  Prior to 2006, Plaintiff reported working as a teaching assistant.[36]  Plaintiff met the insured status requirements for DIB through December 31, 2020.[37]

Plaintiff protectively filed the relevant applications for DIB and SSI on April 16, 2018.[38]  On October 23, 2018, the Social Security Administration ("SSA") initially determined that Plaintiff was not disabled under the applicable rules.[39]  On November 22, 2019, the ALJ issued an unfavorable ruling.[40]  On June 25, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the SSA's final decision.[41]  Plaintiff timely appealed to this Court.  Upon stipulation of the parties, the

---

[34] A.R. 201.

[35] A.R. 201.  *See* 20 C.F.R. §§ 404.1563, 416.963.

[36] A.R. 242.

[37] A.R. 1077.

[38] A.R. 201–04.  Plaintiff's previous application from April 24, 2017 was denied, her untimely request for hearing was dismissed, and Plaintiff did not appeal.  A.R. 35–36, 73–75.

[39] A.R. 75, 97.

[40] A.R. 16–26.

[41] A.R. 1–6.  *See Sims v. Apfel,* 530 U.S. 103, 107 (2000) ("[I]f . . . the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.") (internal citations omitted).

Case 3:22-cv-00238-SLG   Document 22   Filed 10/10/23   Page 8 of 37

Court reversed and remanded for further proceedings on February 3, 2021.[42]  On remand,

the Appeals Council directed the ALJ to:

(1) Obtain additional evidence concerning Plaintiff's upper body impairments;

(2) If warranted and available, obtain a consultative examination and medical source opinions about what Plaintiff can still do despite her impairments;

(3) Further consider the medical source opinions under the regulations applicable to claims filed after March 27, 2017, enlisting the aid and cooperation of Plaintiff's representative to develop evidence from Plaintiff's medical sources;

(4) Re-evaluate Plaintiff's alleged symptoms and RFC.  If necessary, obtain evidence from a medical expert related to Plaintiff's reaching and upper extremity limitations;

(5) Obtain supplemental evidence from a vocational expert to clarify the effect of Plaintiff's limitations on the occupational base, ask hypothetical questions that reflect the specific capacity/limitations established by the record as a whole, and ask the vocational expert to identify examples of appropriate jobs and state the incidence of such jobs in the national economy; and

(6) Identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations.[43]

---

[42] A.R. 1160–63.  The parties also stipulated to and the Court ordered remand on February 3, 2021.  The Court ordered the Appeals Council to instruct the ALJ "to further develop the record and include the entire July 31, 2019 consultative examiner report by Ronald Christensen, M.D.; reevaluate the medical opinion evidence; reevaluate the claimant's residual functional capacity; give the claimant an opportunity for a hearing; and issue a new decision."  *See* Case No. 3:20-cv-00189-SLG, Docket 21 (D.Alaska Feb. 3, 2021).

[43] A.R. 1167–68.

Case 3:22-cv-00238-SLG   Document 22   Filed 10/10/23   Page 9 of 37

After a hearing upon remand, a new ALJ issued an unfavorable decision on August 29, 2022.[44]  Plaintiff requested review by this Court on November 1, 2022.[45]

## IV.    DISCUSSION

Plaintiff is represented by counsel.  In her opening brief, Plaintiff asserts that the ALJ harmfully erred by: (1) failing to find chronic pain syndrome a medically determinable, severe impairment at step two in the sequential process and in determining the RFC and (2) failing to consider the total limiting effects of Plaintiff's impairments in formulating the RFC.[46]  The Commissioner disputes Plaintiff's assertions.[47]  The Court will address each of Plaintiff's assertions in turn:

A.    Chronic Pain Syndrome and the ALJ's Disability Evaluation Process

Plaintiff alleges the ALJ erred in failing to consider all of Plaintiff's medically determinable impairments.  Specifically, she asserts that the ALJ failed to consider Plaintiff's chronic pain syndrome at step two of the sequential disability process and in the RFC assessment.  She alleges that the medical opinion evidence and her testimony must be viewed with chronic pain syndrome in mind, as the "'unifying diagnosis' connecting her chronic pain-related disabilities together."[48]  The Commissioner counters that the ALJ did not err because the ALJ found evidence of severe impairments and

---

[44] A.R. 1074–1091.

[45] Docket 1.

[46] Docket 18 at 15–31.

[47] Docket 20 at 2–12.

[48] Docket 18 at 16.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 10 of 37

decided step two in Plaintiff's favor. The Commissioner also asserts that the ALJ reasonably discounted Plaintiff's self-reports because there was affirmative evidence of malingering and the ALJ reasonably assessed the persuasiveness of the medical opinions based on their supportability and consistency with the record.[49]

1.  *Legal Standards*

At step two of the ALJ's sequential disability evaluation, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.[50] However, step two is a "de minimis screening device [used] to dispose of groundless claims."[51] It is "not meant to identify the impairments that should be taken into account when determining the RFC."[52] The Ninth Circuit has also held that an ALJ's failure to address an impairment at step two is harmless error when the ALJ considers limitations posed by the impairment at a later step in the sequential disability evaluation.[53] A court should affirm the ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal standard and [her] decision is

---

[49] Docket 20 at 2–12.

[50] *Bowen v. Yuckert,* 482 U.S. 137, 145 (1987); *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005) (internal citation omitted) (an ALJ must have substantial evidence to find that the medical evidence clearly establishes that the claimant lacks a medically severe impairment or combination of impairments); 20 C.F.R. §§ 404.1520(a)(4)(ii), (c).

[51] *Webb,* 433 F.3d at 687.

[52] *Buck v. Berryhill,* 869 F.3d 1040, 1048–49 (9th Cir. 2017).
[53] *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (holding the ALJ's failure to consider bursitis at step two, if error, was harmless because the ALJ considered any limitations posed by the bursitis at step four.); *Buck,* 869 F.3d at 1048–49 ("Step two is merely a threshold determination meant to screen out weak claims," and is "not meant to identify the impairments that should be taken into account when determining the RFC." Therefore, the RFC should be "exactly the same regardless of whether certain impairments are considered 'severe' or not.") (internal citations omitted).

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 11 of 37

supported by substantial evidence."[54]  And, it is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."[55]

     2.    *Chronic Pain Syndrome*

The Ninth Circuit has recognized that pain-based impairments "ha[ve] both a physical and psychological component."[56]  The Social Security Administration addresses somatic symptom disorder and related disorders in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings").  The regulations provide the following description of Listing 12.07:

> a. These disorders are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience.  These disorders may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed. Symptoms and signs may include, but are not limited to, pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or deafness.
>
> b. Examples of disorders that we evaluate in this category include somatic symptom disorder, illness anxiety disorder, and conversion disorder.

The Social Security Administration has also acknowledged that some impairments are not easily evaluated using standard diagnostic tools.  For example, it has recognized

---

[54] *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

[55] *Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001).

[56] *Lester v. Chater,* 81 F.3d 821, 829 (9th Cir. 1995) (superseded by statute on other grounds) (discussing a claimant's "acute pain," deemed "chronic pain syndrome" by a medical advisor) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 347 (9th Cir. 1991) (en banc) (recognizing that pain is "a completely subjective phenomenon" and the Commissioner must consider all available evidence in assessing complaints of pain)).

a specific chronic pain syndrome in Social Security Ruling ("SSR") 03-2p.  This SSR explains:

> RSDS (Reflex Sympathetic Dystrophy Syndrome)/ CRPS (Complex Regional Pain Syndrome) is a chronic pain syndrome . . .It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual . . . It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another.  Transient findings are characteristic of RSDS/CRPS . . . It should be noted that conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved.  Clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources.[57]

Despite multiple medical sources diagnosing Plaintiff with chronic pain syndrome and related disorders, the ALJ did not identify or discuss chronic pain syndrome at step two in the disability evaluation process.  Instead, at step two, the ALJ found "no significant mental status examination findings" and that "psychological evaluations [in the record] have noted issues regarding invalidity due to poor effort and possible symptom magnification, rendering them mostly unreliable."[58]   The ALJ cited a state agency psychologist's observation that, based on a review the record as of September 28, 2018, Plaintiff had only a provisional diagnosis of Somatic Disorder, which was not a medically determinable impairment."[59]  And the ALJ found testifying psychologist Collette Valette's

---

[57] Social Security Ruling ("SSR") 03-2p, 2003 WL 22814447, at *1–5.  "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009).

[58] A.R. 1078.

[59] A.R. 91, 1079.

opinion persuasive that the record overall supported secondary gain, which explained Plaintiff's poor effort and performance, rather than somatic symptom disorder.[60]

However, throughout the record, Plaintiff was diagnosed with chronic pain syndrome and related disorders, such as probable somatic symptom disorder, kinesiophobia,[61] and hyperalgesia,[62] by multiple medical providers. For example, in October 2016, Plaintiff saw Jared Kirkham, M.D., of Anchorage Fracture and Orthopedic Clinic. He noted that Plaintiff's CT of the cervical spine from December 8, 2015 showed C6-C7 fusion without complications or stenosis. He reviewed Plaintiff's MRI of the right shoulder showing moderate AC degenerative changes and a moderate downsloping acromion. He also noted that Plaintiff's nerve conduction studies were normal and all muscles examined showed no evidence of electrical instability. Dr. Kirkham opined that Plaintiff's symptoms seemed primarily myofascial in nature and Plaintiff's presentation was complicated by significant hyperalgesia.[63]

On November 21, 2016, Dr. Kirkham diagnosed Plaintiff with "chronic neck pain and postlaminectomy syndrome status post C6-C7 fusion. . .with no residual neurological

---

[60] A.R. 1079.

[61] Kinesiophobia is a fear of movement "in which a patient has an excessive, irrational, and debilitating fear of physical movement and activity resulting from a feeling of vulnerability to painful injury or re-injury." *See* National Library of Medicine, National Center for Biotechnology Information at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9531655/#B42 (last visited July 10, 2023).

[62] Hyperalgesia is a condition that causes extreme sensitivity to pain. A person with this condition overreacts to painful stimuli, resulting in the person feeling increased pain. *See* https://www.webmd.com/pain-management/what-is-hyperalgesia (last visited July 10, 2023).

[63] A.R. 2741–42.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 14 of 37

deficit, but ongoing chronic pain syndrome, depression, kinesiophobia, and central pain hypersensitivity."[64]   In August 2017, Dr. Kirkham noted that Plaintiff's chronic pain syndrome was the "most likely unifying diagnosis for the patient's multiple pain complaints."[65]   In addition to office visits with her medical providers, Plaintiff presented multiple times to the emergency department for chronic pain from approximately September 2016 through September 2019.[66]

On August 30, 2017, Plaintiff saw Barbara Elias, PA-C, for chronic right shoulder pain.   PA Elias noted that the musculoskeletal examination was "severely limited by hyperalgesia."  She diagnosed Plaintiff with moderate right AC joint arthrosis, chronic right shoulder pain (likely myofascial), complex chronic pain syndrome, degenerative disc disease (cervical spine), and anxiety.[67]

From approximately June 2018 through September 2019, Plaintiff regularly saw Luke Liu, M.D., at Neuroversion, for lower back and neck pain.  Plaintiff underwent lumbar injections, ketamine infusion, and other nonsurgical options to relieve pain, but reported that her pain overall was unchanged or more severe after treatment.[68]  On September 4,

---

[64] A.R. 2701–03.

[65] A.R. 340.

[66] *E.g.,* A.R. 549, 1025–29, 1030–36.

[67] A.R. 598–603.

[68] *E.g.,* A.R. 889 ("At this time, she reports that her pain is either the same or more severe than it was before the injection [about one month prior]."), 890 (past procedure history), 896 (pain returning to baseline within two weeks of bilateral lumbar transforaminal epidural steroid injection), 905 (pain returned after bilateral sacroiliac joint injection), 915 (residual pain in lower back after

2019, Dr. Liu diagnosed Plaintiff with chronic pain syndrome as his primary diagnosis, defining it as a "summation of physical and psychological derangements." The treatment plan was to "identify and treat any specific treatable pain generators involved in the maintenance of the constellation of pain symptoms, while [pursuing] palliative medical or non-pharmacological therapies."[69]

Plaintiff also underwent multiple evaluations for her chronic pain and complaints of memory disfunction. For example, on September 28, 2016, Plaintiff was referred to Paul Craig, Ph.D. for a neuropsychological evaluation. Dr. Craig performed an interview and administered multiple neuropsychological tests. He concluded that the evaluation was not "an optimal estimate of [Plaintiff's] actual abilities." However, Dr. Craig commented, "it is not thought that she was consciously attempting to perform subnormal. Rather, [Plaintiff] was struggling so significantly with her chronic neck pain during testing that some of the test results were probably less than optimal because of her being preoccupied with the pain."[70]

On August 17, 2017, Plaintiff saw Kylie Hendren for an initial behavioral health visit for depression and pain management. Therapist Hendren observed that when Plaintiff

---

lumbar interlaminar epidural steroid injection approximately two weeks prior), 956 (no significant relief of pain with IV Ketamine).

[69] A.R. 892–93.

[70] A.R. 2362–71.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 16 of 37

talked about her emotions and feelings about her pain, "she seem[ed] to wince more and cry — showing a serious correlation between the two."[71]

In September 2018, Plaintiff saw Michael C. Rose, Ph.D., for a consultative evaluation. Based on a review of the medical records available, an interview, and a mental status examination, Dr. Rose diagnosed Plaintiff with "Probable Somatic Symptom Disorder with persistent pain." He commented that his assessment findings were "not likely to be a fully reliable and valid estimate of her cognitive or psychological abilities due to apparent symptom magnification." He noted that "[w]hile she may indeed have bona fide physical and/or psychological problems, due to a lack of valid effort as well as evidence of symptom magnification or exaggeration, it is very difficult to know the true nature or extent of the reported problems."[72]

In October 2019, Plaintiff saw Brandy Atkins, DNP, at Orthopedic Physicians Alaska, to identify surgical options in relation to chronic lower back pain complaints. DNP Atkins determined that Plaintiff was not a good surgical candidate. She noted that Plaintiff's "pain is out of proportion to her MRI findings" and diagnosed Plaintiff with lumbar degenerative disc disease, disc displacement, and chronic pain syndrome.[73]

Although the ALJ identified that Plaintiff "consistently reported significant pain and limited mobility and ambulation," she did not discuss or acknowledge that chronic pain

---

[71] A.R. 620–21.

[72] A.R. 864–68.

[73] A.R. 968–70.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 17 of 37

syndrome has "both a physical and psychological component."[74]  Nor did the ALJ acknowledge that "it is characteristic of [chronic pain] syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual."[75] Because the ALJ must consider all available evidence in assessing complaints of pain, the ALJ's failure to acknowledge or discuss Plaintiff's chronic pain syndrome was error.

However, as stated above, any error at step two in identifying chronic pain syndrome as a medically determinable impairment is harmless if the ALJ adequately addressed Plaintiff's limitations in the RFC.[76]  Here, Plaintiff asserts that her testimony and the medical opinion evidence show she is disabled, or "at the very least," establish greater limitations not already accounted for by the ALJ's RFC assessment.  She alleges that the ALJ's failure to include these limitations was harmful error.[77]  The Court addresses Plaintiff's testimony and the medical opinions as follows:

### B.  Plaintiff's Symptom Allegations

---

[74] *Lester v. Chater,* 81 F.3d 821, 829 (9th Cir. 1995) (superseded by statute on other grounds) (discussing a claimant's "acute pain," deemed "chronic pain syndrome" by a medical advisor) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 347 (9th Cir. 1991) (en banc) (recognizing that pain is "a completely subjective phenomenon" and the Commissioner must consider all available evidence in assessing complaints of pain)).

[75] SSR 03-2p, 2003 WL 22814447, at *1.

[76] *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (Because the ALJ considered limitations posed by Lewis's bursitis at step four, "any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

[77] Docket 18 at 25.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 18 of 37

An ALJ's assessment of a claimant's symptoms has two steps.[78]  First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."[79]  Second, "if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms."[80]

In the first step, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."[81]  Here, the ALJ determined that Plaintiff had severe physical impairments, but no medically determinable mental impairments.[82]

In the second step, the ALJ evaluates the intensity and persistence of a claimant's symptoms by considering "all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [the claimant's] symptoms affect [her]."[83]  If a claimant produces objective medical evidence of an underlying impairment, the ALJ

---

[78] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

[79] *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

[80] *Treichler*, 775 F.3d at 1102 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996)).

[81] *Smolen*, 80 F.3d at 1282.

[82] A.R. 1077.

[83] 20 C.F.R. §§ 404.1529(c)(1).  *See also* SSR 16-3p, 2017 WL 5180304.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 19 of 37

may reject testimony regarding the claimant's subjective pain or the intensity of symptoms, but must provide "specific, clear and convincing reasons for doing so."[84] The ALJ is required to "specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines [that] testimony"; general findings are insufficient.[85]

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Specifically, the ALJ discounted Plaintiff's "history of chronic pain complaints and allegations with significant limitations" because the medical evidence contained only "modest objective findings that are not consistent with the extent of [Plaintiff]'s reports and allegations." The ALJ also found that Plaintiff's psychological examinations were not reliable due to symptom magnification. Although the ALJ did not expressly find that Plaintiff was malingering, she found "there are indications of possible secondary gain."[86] And the ALJ found Dr. Valette's testimony persuasive; specifically, Dr. Valette's testimony that secondary gain explained Plaintiff's "poor effort and performance" at the consultative

---

[84] *Smolen,* 80 F.3d at 1281.

[85] *Treichler,* 775 F.3d at 1102 (quoting *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001)); *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995).

[86] A.R. 1081.

evaluation in September 2018 with Dr. Rose.[87]  The ALJ determined Plaintiff's physical examinations were inconsistent, but that the assessed RFC accommodated the "findings that are consistent with some limitations" and Plaintiff's pain complaints.[88]

Plaintiff alleges the ALJ's findings regarding Plaintiff's pain complaints are not supported by the record.  Specifically, Plaintiff alleges the ALJ erred in finding that the record indicated Plaintiff was motivated by possible secondary gain.  She alleges the ALJ's discounting of Plaintiff's claims of significant difficulties with ambulation and need for assistive devices was also unsupported in the record.[89]  The Commissioner counters that the ALJ "reasonably discounted Plaintiff's self-reports because there was affirmative evidence of malingering."[90]

The ALJ may consider symptom magnification and secondary gain in an analysis of symptom testimony, but the ALJ must identify specific, clear, and convincing evidence of improper secondary gain.[91]  Here, only Dr. Valette opined that the record showed

---

[87] A.R.1079.

[88] A.R. 1081–82.

[89] Docket 18 at 30–31.

[90] Docket 20 at 3–4.

[91] *Burrell v. Colvin,* 775 F.3d 1133, 1140 (9th Cir. 2014) (finding that the treating physician's suggestion that "*perhaps* there was an issue of *secondary gain*" without other reasons supported by substantial evidence was insufficient to meet the specific, clear, and convincing standard.) (emphasis in original); *see also Austin v. Saul,* 818 Fed.Appx. 725, 728 (9th Cir. 2020) ("Nor do we equate a claimant's possible exaggerations regarding the severity of his symptoms with affirmative evidence of malingering.").

secondary gain and malingering.[92]  And, although the ALJ stated Dr. Valette's testimony

was based on a review of the record with detailed explanations and citations, it appears

Dr. Valette's opinion on secondary gain was based on her review of the report of an

evaluation conducted by a different psychologist and her opinion contradicted the

diagnosis and conclusions of the evaluator.[93]  Specifically, Dr. Valette referenced Plaintiff's

inability to name the country she was living in and the year during the 2018 psychological

evaluation administered by Dr. Rose was motivated by secondary gain.[94]  She testified

that "someone can be in pain and still be cognitive[ly] intact."[95]  When questioned by

Plaintiff's counsel regarding somatic symptom disorder as an alternative to secondary

gain as an explanation for Plaintiff's performance in Dr. Rose's evaluation, Dr. Valette

---

[92] A.R. 58.  However, the Court also notes that Deana Glick, PA-C, opined that Plaintiff's "pain level appears out of proportion to the typical[ ] outcomes" after cervical spine surgery and she was "[c]onsidering adjacent level degeneration or possibly secondary gain, it is unclear."  PA Glick recommended pain management for further evaluation and treatment options.  A.R. 559.

[93] As the Court has noted in the past, at least one ALJ in the Ninth Circuit has excluded the opinion of Dr. Valette because of her disciplinary history.  *See Smith v. Saul,* No. 3:19-cv-00123-RRB, 2020 WL 13538684, at *2 (D. Alaska Jan. 27, 2020) (citing *Quinones v. Comm'r of Soc. Sec.,* No. 19CV274-W (BLM), 2019 WL 3817997, at *7 (S.D. Cal. Aug. 14, 2019) (noting that the Psychological Evaluation performed by Dr. Valette dated January 6, 2014, was given no weight by the ALJ hearing the case, based upon objection of Claimant's counsel).  Moreover, a public records search reveals two disciplinary actions by the Colorado State Board of Psychologist Examiners against Dr. Valette; one admonition effective May 2, 2016 and a second admonition effective April 5, 2022.  *See* COLORADO DEPARTMENT OF REGULATORY AGENCIES, DIVISION OF PROFESSIONS AND OCCUPATIONS, VERIFY A COLORADO PROFESSIONAL OR BUSINESS LICENSE, https://apps.colorado.gov/dora/licensing/Lookup/LicenseLookup.aspx.

[94] Dr. Rose did not comment specifically about Plaintiff's inability to name the correct year or the country she was living in.  Instead, Dr. Rose commented that the results of Plaintiff's "Mini-Mental Status Examination" should be "viewed skeptically" because Plaintiff "did not appear to be giving a valid effort due to complaints of pain."  A.R. 867.

[95] A.R. 58.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 22 of 37

reiterated that "secondary ga[in] plays an important part of not knowing what country you're living in and not knowing what date it is, not even the year."[96] Dr. Valette concluded at the first hearing that she would have diagnosed malingering based on her review of Dr. Rose's evaluation, and not Somatic Symptom Disorder.[97]

However, none of Plaintiff's medical providers diagnosed malingering, including Dr. Rose. Dr. Valette's testimony is contrary to Dr. Rose's conclusion that Plaintiff appeared to meet the diagnostic criteria for somatic system disorder with persistent pain.[98] Moreover, the ALJ's summary of Dr. Rose's mental status examination does not include Dr. Rose's explanation for Plaintiff's less than valid effort. The ALJ stated that "Dr. Rose noted [Plaintiff] did not appear to be giving a valid effort,"[99] but the ALJ did not include the rest of Dr. Rose's sentence which reads, "*due to complaints of pain*, so the following information should be viewed skeptically."[100]

While there is no affirmative evidence of malingering, the Court acknowledges that the record is replete with records describing Plaintiff's out-of-proportion pain complaints, pain complaints interfering with functional assessments, and symptom magnification.

---

[96] A.R. 59.

[97] A.R. 58, 864–68.

[98] A.R. 868. The fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) defines somatic symptom disorder as "the manifestation of one or more physical symptoms accompanied by excessive thoughts, emotion, and/or behavior related to the symptom, which causes significant distress and/or dysfunction. These symptoms may or may not be explained by a medical condition." *See* https://www.ncbi.nlm.nih.gov.

[99] A.R. 1078.

[100] A.R. 867 (emphasis added).

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 23 of 37

However, these records show that Plaintiff's medical providers and consultative examiners repeatedly linked Plaintiff's reports of physical pain with a mental component.[101] Yet, the ALJ isolated Plaintiff's physical impairments in her decision while citing evidence of a psychological overlay to discredit Plaintiff's subjective pain complaints.[102] Because the ALJ must consider all available evidence in assessing complaints of pain, the ALJ's failure to acknowledge or discuss Plaintiff's chronic pain syndrome was error.

Plaintiff also provides examples of evidence in the record to contradict the ALJ's conclusion that the record demonstrated "little objective evidence to support the need for assistive devices that are sometimes noted in the record, or to support her allegations of significant difficulties with ambulation."[103] As set forth above, if the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[104] Although Plaintiff's examples show that Plaintiff used assistive devices, Plaintiff has not claimed that a medical provider wrote a prescription for an assistive device and the objective evidence does not appear to support the use of assistive devices.[105] But by failing to acknowledge or address Plaintiff's chronic pain syndrome

---

[101] *See e.g.,* A.R. 620–21, 868, 892–93, 968–70, 2365.

[102] A.R. 1080 (the RFC has no limitations for mental impairments), 1081–1085.

[103] Docket 18 at 26–27; A.R. 1081.

[104] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[105] Docket 18 at 26–27.

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 24 of 37

and related disorders, including the out-of-proportion pain reports and inconsistencies with the objective medical findings that are characteristic of chronic pain syndrome, the ALJ's reasons for discounting Plaintiff's pain complaints are not specific, clear, or convincing.

C.    Medical Opinions of PT Ross, Dr. Caldwell, Dr. Lebeau, and Dr. Christensen

Plaintiff asserts that the ALJ's rejection of PT Ross's opinion that Plaintiff was unable to work, Dr. Caldwell's opinion regarding occasional reaching, and Dr. Christensen's opinion that Plaintiff was limited to sedentary work, constitute harmful error. Plaintiff also asserts that the ALJ erred by finding Dr. Lebeau's testimony persuasive.[106] The Commissioner counters that the ALJ reasonably assessed the medical opinions based on their supportability and consistency with the record.[107]

1. *The SSA Regulations for Claims Filed After March 27, 2017*

Plaintiff applied for DIB and SSI benefits on or about April 16, 2018, so the regulations that became effective on March 27, 2017, apply to her claim.[108] Under these new regulations, the definition of what constitutes a medical opinion has been narrowed, focusing on what the claimant can do despite her impairments and what work-related limitations are present.[109] The new regulations define a medical opinion as follows:

---

[106] Docket 18 at 26–31.

[107] Docket 20 at 4–12.

[108] On January 18, 2017, the SSA published revisions to the rules regarding the evaluation of medical evidence. The revisions became effective on March 27, 2017. *See* 82 C.F.R. § 5844, 5869 (1-18-2017).

[109] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:

(i)     Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii)    Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)   Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)    Your ability to adapt to environmental conditions, such as temperature or fumes.[110]

The new regulations further provide that the ALJ no longer gives any particular weight to a medical opinion based on its source, thereby eliminating the treating source rule.[111] Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[112]

---

[110] 20 C.F.R. § 404.1513(a)(2).

[111] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

[112] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are considered the most important factors for evaluating persuasiveness.[113]  Supportability and consistency are explained as follows in the regulations:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency.   The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[114]

Generally, these are the only two factors the ALJ is required to address in her decision.[115] However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[116]  In the Ninth Circuit, the new regulatory framework no longer

---

[113] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (for claims filed on or after March 27, 2017).

[114] 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

[115] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[116] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

requires ALJs to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining medical source's opinion.[117]

### 2. PT Ross's Opinion

In September 2019, Plaintiff saw Chad Ross, PT, DPT, for a work restrictions assessment that took three days to complete. Based on PT Ross's observations and objective physical therapy testing, PT Ross recommended no part-time or full-time work. He noted that Plaintiff demonstrated "marked limitation" in her tolerance for work related physical testing and her walking and standing performance was deemed unsafe. PT Ross also observed that Plaintiff sat in her wheelchair for approximately 10 minutes at a time during testing, but she was unable to sit for longer amounts of time.[118] PT Ross also noted that Plaintiff was unable to perform any productive manual tasks with her right arm.[119]

The ALJ found PT Ross's opinion unpersuasive because "[i]t was based on [Plaintiff]'s subjective reports and her presentation during the evaluation which is not supported by the medical evidence."[120] Lack of objective medical evidence is sufficient to reject a medical opinion which is "brief, conclusory, and inadequately supported by clinical findings."[121] However, a medical source's opinion should be evaluated in the

---

[117] *Woods v. Kijakazi,* 32 F.4th 785 (9th Cir. 2022).

[118] Plaintiff used a wheelchair and other assistive devices, but Plaintiff does not claim that her medical providers prescribed such devices. Docket 18 at 26–28.

[119] A.R. 883–85.

[120] A.R. 1089–90.

[121] *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020).

context of that source's treatment notes.[122]  Here, PT Ross's work opinion was based on his observations of Plaintiff over three days, an examination of Plaintiff, and an assessment based on various performance tests simulating work conditions.[123] Moreover, without acknowledging or addressing Plaintiff's chronic pain syndrome and related disorders, the ALJ's reliance on objective medical evidence alone is not sufficient to reject PT Ross's work opinion.

3.  *Reviewing State Agency Physician Dr. Caldwell*

On September 28, 2018, reviewing state agency physician Jay Caldwell, M.D., M.P.H., Ph.D., opined that Plaintiff should be limited to frequent pushing and pulling in the right upper extremity and occasional reaching and handling on the right.  Dr. Caldwell also opined that Plaintiff's "[c]redibility is almost completely shot, although from her point-of-view she does experience life-altering pain."  He also noted Plaintiff's "[s]evere, multifactorial pain syndrome related to [her] neck, shoulder, and low back . . . most recently diagnosed as Somatic Symptom Disorder."[124]

The ALJ found Dr. Caldwell's limitations related to Plaintiff's right upper extremity were not adequately explained, sufficiently supported, or consistent with the overall record.  The ALJ reasoned that although imaging showed moderate findings, Plaintiff

---

[122] *See* 20 C.F.R. §§ 404.502(f) ("Objective medical evidence means signs, laboratory findings, or both."), 404.502(g) ("Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques.").

[123] A.R. 883–85.

[124] A.R. 869–76.

received "minimal treatment and examinations have noted normal upper extremity strength and sensation."[125] The ALJ also cited a notation by Plaintiff's medical provider in September 2017.[126] In that notation, when Plaintiff requested a letter stating Plaintiff was disabled, her provider, Naomi Torrance, DNP, stated she had "told [Plaintiff] before that I would leave such a determination up to the SSI physicians, because [Plaintiff]'s case is quite complicated and while she has pain, she has full use of all 4 appendages and the cognitive ability to work."[127]

Courts in the Ninth Circuit have found that, even under the new regulations governing medical opinions, an ALJ may not "cherry-pick" the record to make a supportability or consistency finding.[128] Here, the ALJ acknowledged that the objective medical evidence regarding Plaintiff's right upper extremity showed moderate degenerative changes,[129] but discounted this evidence in her evaluation of Dr. Caldwell's opinion.[130] Moreover, as with the other medical opinions of record, the ALJ's review of Dr. Caldwell's opinions ignores all of Dr. Caldwell's references to a psychological element involved with Plaintiff's physical impairments.

---

[125] A.R. 1087–88.

[126] A.R. 1082.

[127] A.R. 584.

[128] *Buethe v. Comm'r of Soc. Sec.,* No. 2:20-cv-552-KJN, 2021 WL 1966202, at *5 (E.D. Cal. May 17, 2021) (citing cases); *see also Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits.).

[129] A.R. 918.

[130] A.R. 1087–88.

Plaintiff also asserts, in a footnote, that the ALJ failed to follow this Court's instruction and the Appeals Council's order on remand to obtain additional evidence regarding Plaintiff's upper extremity limitations because the ALJ did not order a consultative examination.[131] The Court's Order Re Stipulated Motion for Remand does not specifically reference the need for additional evidence concerning Plaintiff's upper extremities.[132] However, on March 5, 2021, the Appeals Council ordered the ALJ to "obtain additional evidence concerning the claimant's upper body impairments in order to complete the administrative record . . . The additional evidence may include, if warranted and available, a consultative examination and medical source opinions about what the claimant can still do despite the impairment."[133]

As noted by the Appeals Council, Plaintiff's ability to reach frequently is required for Plaintiff to perform her past relevant work as a hospital administrative clerk/admitting clerk.[134] Because the ALJ did not obtain additional evidence regarding Plaintiff's upper body impairments and the ALJ's evaluation of Dr. Caldwell's opinion is not supported by substantial evidence, the Court will also provide instructions on remand to the ALJ to comply with the Appeals Council's previous remand order concerning Plaintiff's upper extremity impairments.

4. *Dr. Lebeau's testimony*

---

[131] Docket 18 at 26, n.19.

[132] A.R. 1160.  *See also* n. 42.

[133] A.R. 1167.

[134] A.R. 1166; *See* DICTIONARY OF OCCUPATIONAL TITLES ("DOT") 205.362-018.

Plaintiff asserts that Dr. Lebeau's testimony should not have been used by the ALJ to discount Dr. Caldwell's medical opinions regarding Plaintiff's right upper extremity impairment. She asserts that Dr. Lebeau expressed confusion regarding Plaintiff's case, he did not have the requisite experience to interpret the medical records and issue an informed, professional opinion regarding chronic pain syndrome in the same way a pain management or physical medicine and rehabilitation physician would be able to provide, and his testimony was "highly offensive" and "riddled with bias."[135] The Commissioner counters that Plaintiff's "own interpretation of Dr. Lebeau's opinion cannot justify overturning the ALJ's reasonable and unchallenged findings under the deferential substantial evidence standard of review."[136]

The ALJ noted that Dr. Lebeau opined that manipulative limitations for the upper extremity were not supported by the medical record and found this opinion more persuasive than Dr. Caldwell's opinion. The ALJ reasoned that Dr. Lebeau's opinion came later in time and was therefore based on a more complete record.[137]

Although Plaintiff provides examples from the medical record of upper extremity limitations, it is not this Court's role to reweigh the evidence.[138] However, as pointed out by Plaintiff, Dr. Lebeau's testimony reflects confusion and insensitivity regarding Plaintiff's

---

[135] Docket 18 at 29.

[136] Docket 20 at 9.

[137] A.R. 1088.

[138] Docket 18 at 27–29. *See Ahearn v. Saul,* 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ.").

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 32 of 37

pain vis-a-vis the objective medical findings in the record.[139]   And despite Plaintiff's attorney specifically asking for expert testimony on somatic symptom disorder at Listing 12.07, Dr. Lebeau did not address the Listing 12.07 criteria in his testimony.[140]   On remand, the ALJ should obtain evidence from an expert familiar with chronic pain syndrome and related disorders.[141]

5. *Dr. Christiansen's Opinion*

On July 31, 2018, Plaintiff saw family practitioner Ronald E. Christensen, M.D., for a consultative examination.   Based on a record review, interview, and physical examination, Dr. Christensen's assessments included chronic right shoulder pain with AC arthritis, chronic low back pain with early degenerative disc disease, and probable anxiety, depression, kinesiophobia, and disability behavior.   He noted that Plaintiff refused manipulation of her neck and shoulders due to pain and refused range of motion testing

---

[139] *See e.g.,* A.R. 44 ("I said she was living the life of an invalid . . . and that her muscles are deconditioned because she's just lying around and not really accomplishing anything."), 44 ("The only thing [that] remains is just . . . peculiar pain in which you see her pain syndrome."), 49 ("I think one of the problems we're having . . . is that we're faced with conflicting statements, conflicting physical findings that make no sense, and it's just hard to say what is what."), 54 ("I just don't see now that we can understand exactly what makes her so disabled . . .[I]t just doesn't make sense.  There's nothing, you know, physiologic about a lot of these complaints.  They just don't go on in normal people and that's the best I can say.").

[140] At the October 16, 2019 hearing, Plaintiff's attorney stated, "I am going to allege or point out that the record also would support a 12.07 somatic symptom disorder."  The ALJ then noted that medical experts had been called to testify regarding both Plaintiff's physical and mental impairments.  Plaintiff's attorney then stated, "So we'll see if Dr. [Lebeau] can opine on [Listing 12.07] as well."  A.R. 38.

[141] *See Fruichantie v. Saul,* Case No. 3:20-cv-00131-RRB, 2021 WL 2661137, at *5–7 (D. Alaska June 21, 2021) ("The ALJ's reliance on the testimony of an 'expert' who was unfamiliar with Claimant's primary condition was error.").  Dr. Lebeau's expertise is in cardiology and internal medicine.  A.R. 877–79.

of her back. He also noted that Plaintiff's lower extremities could not be assessed because the examination was performed with Plaintiff standing and her husband holding on to her. Dr. Christensen opined that "[b]ased on today's examination, [Plaintiff] is generally sedentary and has limited function." He stated that he believed there was "quite a psychiatric overlay that is compounding her limitations. A psychiatric evaluation would be helpful."[142]

The ALJ was directed by the Appeals Council on remand from this Court to include a missing page from Dr. Christiansen's examination and provide an evaluation of his opinion.[143] In the decision after remand, the ALJ found Dr. Christiansen's opinion was not persuasive because he did not define "sedentary" and did not provide a functional assessment. The ALJ also noted that Dr. Christiansen's findings were "minimal" due to Plaintiff's "lack of cooperation" and a "psychiatric overlay." The ALJ found Dr. Christiansen's conclusions unreliable because they were based only on Plaintiff's presentation and subjective reports and lacked corroborative objective findings.[144]

Plaintiff asserts that the ALJ erred in rejecting Dr. Christiansen's opinion that Plaintiff was limited to sedentary work because Dr. Christiansen did not define "sedentary."[145] The Commissioner counters that Dr. Christiansen was describing Plaintiff's lifestyle as sedentary, not that Plaintiff could perform sedentary work, and that

---

[142] A.R. 2217.

[143] A.R. 1167.

[144] A.R. 1087.

[145] Docket 18 at 30.

the ALJ reasonably found Dr. Christiansen's opinion unexplained and unpersuasive.[146]

The Court agrees with the Commissioner that Dr. Christiansen's use of the word "sedentary" does not appear to be an opinion regarding Plaintiff's ability to do sedentary work. And much of Dr. Christiansen's examination of Plaintiff was hindered by pain complaints, guarding, and other behaviors.[147] However, the ALJ is required to consider the combined effects of all of a claimant's impairments.[148] The impairments "must not be fragmentized in evaluating their effects."[149] As with the medical opinions of PT Ross and Dr. Caldwell, the ALJ did not address Plaintiff's chronic pain syndrome, somatic symptom disorder, or related disorders in combination with Plaintiff's severe physical impairments.

For the reasons provided above, substantial evidence does not support the ALJ's rejection of Plaintiff's testimony and her treating and examining medical source opinions with respect to the effects of Plaintiff's chronic pain syndrome, somatoform disorder, and related disorders in combination with her physical impairments. As a result, the ALJ did not adequately include limitations for Plaintiff's chronic pain syndrome in the RFC. Therefore, the ALJ's failure to address chronic pain syndrome is not harmless and is reversable error.[150]

---

[146] Docket 20 at 10.

[147] A.R. 2215–17.

[148] 20 C.F.R. § 416.923.

[149] *Lester v. Chater,* 81 F.3d 821, 829 (9th Cir. 1995) (superseded by statute on other grounds) (internal quotation omitted).

[150] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015).

D.    Scope of Remand

Plaintiff requests that the Court enter judgment under 42 U.S.C. § 405(g), reversing the SSA's final decision and remanding for further proceedings.[151]  The "ordinary remand rule" applies to disability cases.  When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[152]   For the above reasons, the proper remedy is to remand for further administrative proceedings and the issuance of a new decision with appropriate findings at each step of the sequential evaluation.

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and not supported by substantial evidence.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 18 is GRANTED and the Commissioner's final decision is VACATED and REMANDED for further proceedings.  Upon remand, the ALJ should be instructed to:

1. Evaluate the psychological component of Plaintiff's pain complaints, including her chronic pain syndrome diagnosis and related disorders, and discuss the combined effects of all of Plaintiff's impairments.

2. Obtain a consultative examination and medical source opinion from an appropriate expert concerning the psychological component of Plaintiff's pain

---

[151] Docket 18 at 31.

[152] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler,* 775 F.3d at 1099).

Case No. 3:22-cv-00238-SLG, *Tina R.H. v. Kijakazi*
Decision and Order
Page 36 of 37

complaints, including her chronic pain syndrome diagnosis and related disorders, or obtain testimony from an expert trained in pain management.

3. Obtain additional evidence concerning Plaintiff's upper body limitations, including medical opinions and if warranted and available, a consultative examination to determine what Plaintiff can still do despite the impairment.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 10th day of October, at Anchorage, Alaska.

/s/ Sharon L. Gleason

UNITED STATES DISTRICT JUDGE